[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-12398

Non-Argument Calendar

_____

LAURA LANE NEWTON,

Plaintiff-Appellee,

*versus*

EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 6:23-cv-00059-JRH-BKE

_____

Before NEWSOM, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Experian Information Solutions ("Experian") appeals the district court's denial of its motion to compel arbitration. The district court denied the motion because it held that Experian had not provided sufficient evidence to show that the plaintiff had assented to the arbitration agreement.

## I. FACTS

Plaintiff Laura Newton was notified of a data breach resulting in her personal information being compromised and offered a free year of credit monitoring by Experian. Following the notice's advice, she initiated a credit freeze and signed up for the free year of credit monitoring via Experian through its ConsumerInfo.com affiliate. Five years later, Newton obtained her credit file from Experian and discovered several pieces of information that did not belong to her. She then filed this lawsuit under the Fair Credit Reporting Act, 15 U.S.C.A. §§ 1681-1681x. Experian moved to compel arbitration and submitted a declaration by Dan Smith, ConsumerInfo.com's Director of Product Operations, which laid out the process for signing up for a monitoring account and included screenshots. The district court rejected this declaration as insufficient to show that Newton actually acceded to the agreement because it did not state what Newton in particular saw when she signed up but instead only spoke to what a consumer would see when signing up.

## II. STANDARD OF REVIEW

We review de novo the District Court's denial of Experian's motion to compel arbitration. *See Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017).

## III. DISCUSSION

Under the Federal Arbitration Act ("FAA"), courts are to enforce arbitration agreements according to their terms. 9 U.S.C. §§ 2, 4.  However, because that arbitration agreement is a contract, courts cannot compel arbitration unless they are satisfied that the parties agreed to arbitrate. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 147–49 (2024). "Before referring a dispute to an arbitrator, therefore, the court determines whether a valid arbitration agreement exists." *Id.* at 149 (alterations adopted) (citation and internal quotation marks omitted).

Under 9 U.S.C. § 4, if the existence of the agreement is not genuinely disputed, the court must compel arbitration when a party moves to compel arbitration. 9 U.S.C. § 4. The court must hold a summary trial if the opposing party raises a genuine dispute of material fact as to contract formation.  *Id.; Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016).  In this way, the § 4 framework resembles the standard for summary judgment. *Bazemore*, 827 F.3d at 1333; *see also* Fed. R. Civ. P. 56(a).

We have stated that these principles apply to "clickwrap" agreements, in which users assent to terms by clicking a button

near a disclosure referencing those terms. *See Bazemore*, 827 F.3d at 1327, 1333.  But the question of whether a clickwrap agreement forms a valid contract depends on state contract law. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Under Georgia law, all parties must assent to all conditions of the contract for it to be binding.  O.C.G.A. § 13-3-2.  Georgia courts have explained their test:

> In determining whether there was a mutual assent, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent. Further, in cases such as this one, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement. Where such extrinsic evidence exists and is disputed, the question of whether a party has assented to the contract is generally a matter for the jury.

*Thornton v. Uber Techs., Inc.*, 359 Ga. App. 790, 792–93, 858 S.E.2d 255, 258 (2021) (quoting *Turner Broad. Sys., Inc. v. McDavid*, 303 Ga. App. 593, 597, 693 S.E.2d 873, 878 (2010)).  In *Thornton*, the court recited Georgia law that failure to read does not excuse a party's obligations under a contract under the objective standard.  *Id.* at 794, 858  S.E.2d at 259.  It cited approvingly cases from other

24-12398                Opinion of the Court                5

circuits that held a reasonably prudent smartphone user knows that text highlighted in blue links to another page where additional information is to be found and thus would have constructive notice of the hyperlinked terms of use. *Id.* at 793-94, 858 S.E.2d at 258. It held that Thornton could have been bound by the terms and conditions after registering his account, if he had seen the link. *Id.* at 794, 858 S.E.2d at 259. However, because the plaintiff had submitted evidence that the link was obscured by a pop-up keyboard on an Android phone (like the one Thornton used), the court held there was a question of material fact that precluded compelling arbitration. *Id.* at 796, 858 S.E.2d at 260.

Interpreting Georgia law in the context of online agreements, we held in *Bazemore*, 827 F.3d at 1330-31, that a proponent of arbitration must provide evidence of the content of the terms, how the terms were displayed, and that the party providing this information had personal knowledge of these facts. There, the credit card company presented a declaration from an employee who stated that the plaintiff accepted the terms of governing her account and opened her account on a certain date but did not explain how he knew this or provide any documentary proof. *Id.* at 1330. The company did not produce the terms governing her account or what appeared on the plaintiff's screen. *Id.* at 1331. This, we held, was insufficient to satisfy the burden of showing the nonmoving party agreed to the terms. *Id.*

A recent case from this Court addressed the evidentiary burden faced by the party seeking to compel arbitration, also Experian.

6                    Opinion of the Court              24-12398

There, we held that the declaration from the ConsumerInfo.com corporate officer satisfied the burden of showing that the plaintiff had agreed to the terms. *Lamonaco v. Experian Information Solutions, Inc.*, 2025 WL 1831283, __ F.4th __ (11th Cir. 2025). The officer described the enrollment process in detail and attested that the plaintiff had enrolled in the service on a certain date, asserting that he had personal knowledge based on internal documents he had reviewed. *Id.* at *3. He also attached the Terms of Use that the plaintiff agreed to by enrolling and included screenshots of the pages the plaintiff encountered during enrollment. *Id.* The court noted that the plaintiff did not dispute these facts but instead argued that the declaration was insufficient to establish her agreement. *Id.* at *4. We rejected this argument, reasoning that "[a] declaration that sets forth specific facts based on personal knowledge, describes the enrollment process, and appends the operative contract is competent evidence sufficient to satisfy Experian's initial burden." *Id.*

Here, Experian produced sufficient evidence to demonstrate that Newton constructively agreed to the terms of the contract that requires arbitration. Under Georgia law, she could be bound by the hyperlinked terms of use when enrolling in a service, regardless of whether she actually clicked on them. *See Thornton*, 359 Ga.App. at 793-94, 858 S.E.2d at 258-59 (These terms are clear against the white background and the blue hyperlink draws attention to the terms and conditions, such that a reasonable smartphone user would know that more information would be found if he clicked upon the hyperlink. Because failure to read does not excuse a

24-12398                 Opinion of the Court                        7

party's obligations under a contract, under the objective standard of assent, Thornton could have been bound by Uber's terms and conditions after registering his account."). Further, the declaration produced by Experian's corporate officer in this case mirrored that produced in *Lamonaco*, which we held was sufficient. *Lamonaco*, ___ F.4th at ___, 2025 WL 1831283 at *4. Specifically, the declarant described his position with the company, which involved being familiar with the enrollment process and Experian's business records that document consumers' use of their accounts. Based on his access of a consumer's records, he could confirm membership details such as date and time of enrollment, the Terms of Use they agreed to, and "the exact path the consumer encountered when completing their enrollment." He then recounted the date Newton enrolled and stated that she had to have completed two webforms in order to successfully enroll. On the second form, there was a disclosure stating that by clicking, she agreed to the Terms of Use Agreement, among other things. The declarant described how the Terms of Use were set off in blue text as a hypertext link to the Terms of Use document, which was located immediately above the "Submit Secure Order" button on the web form that Newton clicked in order to enroll. Both of these forms were included as exhibits to the declaration as were the Terms of Use in effect at the time of Newton's enrollment.

Because Experian produced sufficient evidence of Newton's acceptance of the Terms of Use, the decision of the district court is REVERSED and this case is REMANDED for further proceedings.